IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

DEONE ANTONIO MELVIN,                    *
                                         *        Civil No. AW-08-1831
        v.                               *        Crim. No. AW-03-0321
                                         *
                                         *
UNITED STATES OF AMERICA.           ******

## MEMORANDUM OPINION

### I

Before the Court is a Motion/Petition by the Petitioner/Defendant, Deone Anthonio Melvin,

for relief pursuant to 18 U.S.C. § 2255.  The Government has filed an opposition to the Motion

and the Petitioner has filed his reply to the Government's opposition.  The Motion is now ripe for

resolution.

### II

Some brief background information is in order.  Petitioner, Deone Anthonio Melvin, Ramone

Jones, Stephon Mason, Adrian Alexander along with 11 others were charged in a 15- count federal

indictment in Maryland handed down on July 9, 2003.  Although the charges varied with respect to

each defendant, the essential charges ranged from conspiracy to distribute and possess with the intent

to distribute cocaine and cocaine base,  money laundering,  possession of a firearm by a convicted

felon and possession of firearm in furtherance of a drug trafficking crime.  On November 13, 2003,

Petitioner, Jones, Mason, and Alexander were charged along with 12 others in a 15-count

superseding indictment again alleging drug trafficking, money laundering and/or possession of

firearms.  Petitioner, Jones, Mason, and Alexander went to trial.  A number of co-conspirators

testified during the trial.  The record is quite voluminous but the Court will briefly summarize the

operative facts.

Commencing in 1997, Shahid Omar ran a drug distribution operation in Maryland. Omar obtained his cocaine in New York from Franscisco Despiau who had several different sources of supply. Omar made regular trips to New York, often accompanied by Mason and traveled in vehicles containing hidden compartments used for storing drugs. Once the cocaine arrived in Maryland, Omar sold it to customers, including Mason. Mason in return had customers, including a customer somewhere in 1999 by the name of Arron Harrod. On September 4, 1999. Harrod met Omar and Mason to consummate a three kilogram transaction. After Harrod approached the vehicle and handed Mason $66,000, Omar shot Harrod about 8 or 9 times. Harrod survived and was later bribed for $25,000 by Mason not to testify against Omar. Although he signed an affidavit that Omar did not shoot him, nevertheless at Omar's trial, Harrod testified truthfully. While Omar was incarcerated, Mason took the helm and began a relationship with Despiau where he traveled on several occasions to New York to make numerous purchases, paying Omar a fee for having given Mason the (Despiau) source. In April of 2000, Mason was stopped and his blue Ford Windstar was searched wherein weapons were seized, including, the gun which Omar had used to shoot Harrod. Mason was arrested and incarcerated. Petitioner and Jones then took the leadership and traveled to New York to purchase drugs and numerous vehicles with hidden compartments from Despiau. Petitioner and Jones [occasionally accompanied by others who rode with them] made purchases of approximately 10 kilograms of cocaine each week. Most of the vehicles equipped with hidden compartments were placed in the names of others different from the true users and drivers. Petitioner and Jones were also assisted from time to time by drivers who picked up and delivered drug money to Despiau. Petitioner employed Alexander as driver and Jones used Bennie Wilder.

2

While incarcerated, Mason sent letters insisting that Petitioner and Jones pay him a fee each time they obtained cocaine from Despiau.  In summer of 2002, Mason was released from incarceration and Petitioner, Mason and Jones continued to purchase cocaine from Despiau.  Between summer of 2002 and spring of 2003, Petitioner, Mason and Jones distributed at least 80 kilograms of cocaine.  Mason distributed both cocaine and crack that he prepared in a microwave.  By the spring and summer of 2003, Mason and Jones had incurred significant debt on the cocaine purchases. As a result Despiau cut off the supply which frustrated Petitioner, Mason, Jones and Alexander. During the summer of 2003 the investigation continued with Title III interceptions over targeted and related telephones.  Law enforcement officials overheard numerous conversations regarding drug purchases, distributions, the problems with the indebtedness to Despiau, and the search for potential new sources.  The wiretaps also enabled law enforcement officials to learn about the titling of vehicles in names of others, about which vehicles had hidden compartments, about ways to hide the cocaine brought back from New York and about where and in which residences they should store and hide weapons.

The investigation concluded on July 31, 2003 with the execution of multiple search warrants. The Court need not particularize those items seized and attributed to others, but with reference to Petitioner, the officers found a Glock .45 caliber pistol in Petitioner's bedroom at the apartment he shared with Jones in Upper Marlboro, Maryland.  Officers also found at the home of Dana Dark (4310 Lavender Lane in Bowie) a Ruger 9 mm pistol, a Heckler & Koch .40 caliber pistol, an Intratec 9mm pistol, and a Masterpiece Arms .45 caliber pistol.  It was on the Title III interceptions that law enforcement officials overheard Petitioner and Jones discussing placing the firearms at Dark's Lavender residence because of their fears that law enforcement officials could search their residences.

3

Finally, in an area utilized by Audrey Melvin's (Petitioner's mother) home, law enforcement officials found a riffle, a digital scale with cocaine residue, a Pyrex disk with crack residue, and other materials used for the packaging and cooking of cocaine, as well as a money counter.

In July 2004, a jury convicted Petitioner of conspiracy to distribute and to possess with intent to distribute 5 kilograms or more of cocaine and a substantive distribution offense. Petitioner was acquitted on one of the three counts charging him with possession of firearms in furtherance of a drug crime. The jury deadlocked on all remaining counts as to Petitioner prompting the Court to declare a mistrial. Subsequent thereto, the grand jury handed down a second superseding thirteen count indictment charging Petitioner and others with a variety of drug trafficking, money laundering, firearm offenses, and a forfeiture allegation. The second superseding indictment charged Petitioner with conspiracy to commit money laundering 18 U.S.C § 1956 (h)(Count 3); two counts of possession of firearms in furtherance of a drug trafficking crime 18 U.S.C. (Counts 6 and 7); and possession of firearm by convicted felon 18 U.S.C. § 922 (g) (1) (Count 8). The retrial resulted in Petitioner being convicted on all four counts of the second superseding indictment.

On September 26, 2005, the Court sentenced Petitioner as follows: Concurrent sentences of 180 months' imprisonment on Counts one and five of the superseding indictment and Count three of the second superseding indictment; a 120 month concurrent sentence on Count 8 of the second superseding Indictment; a 5 year consecutive sentence on Count 6 of the second superseding Indictment; and a twenty-five year consecutive sentence on Count 7 of the second superseding Indictment. Petitioner appealed his verdict and judgment to the United States Court of Appeals for the Fourth Circuit where his sentenced was affirmed on August 17, 2007. (*See*, 2007 WL 2046735 (C.A.4 (Md).) The United States Supreme Court denied Petitioner's petition for *certiorari*. This

4

present Motion/Petition to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 was timely filed on July 14, 2008 and the Motion is now ripe for resolution.

## III

Petitioner presents one ground that he contends entitle him to relief. Petitioner claims that he was denied the effective assistance of counsel based upon his counsel's alleged failure to have challenged the Government's obligation to have proved a specific nexus between the possession of a firearm and drug trafficking under 18 U.S.C. § 924 ( C ).

With respect to Petitioner's claim that his counsel was ineffective, the Court reviews his allegations under the well established standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), under which a claimant must establish the two prong standard of deficient performance and prejudice. In other words, in order to succeed on his claim of ineffective assistance of counsel, Petitioner must show that his counsel's performance was deficient in that counsel made errors so serious that he ceased to function as a counsel within the meaning of the Sixth Amendment, and that the alleged deficient performance prejudiced the defense. Id.

Preliminarily, the Court agrees with both Petitioner and the Government that in order to sustain a conviction under 18 U.S.C. § 924 © the Government must establish that Petitioner possessed a firearm and that the possession of that firearm had to further a drug trafficking crime. To prove "in furtherance" the Government was obligated to present evidence that the possession of the firearms set forth in Counts 6 and 7 furthered, advanced, or helped forward a drug trafficking crime. Both sides correctly recite this requirement in their respective pleadings. The Court gave this and even more clarifying instructions to the jury directing them to review the evidence and to determine whether the Government proved beyond a reasonable doubt that Petitioner possessed the firearms **and** that the possession of the firearms furthered a drug trafficking crime. The Court

5

believes that the evidence generated at trial supported the jury verdict. Even had Petitioner's counsel not in any way mentioned the need for the Government to establish a nexus between the firearms and the drug trafficking, the Court instructed the jury of that requirement and there is nothing to reflect that the jury did not follow the Court's instruction. But more importantly, a careful review of the transcript of the closing argument by Petitioner's counsel to the jury is dispositive of Petitioner's claim that his counsel failed to argue the failure of the government to have proven the nexus between the possession of the guns and the drug trafficking. There was a mound of evidence presented with respect to Petitioner's involvement in drug trafficking and the Court [and most likely the jury] recognized that the attorney for Petitioner was not and could not in good faith challenge Petitioner's involvement in the drug trafficking conspiracy which had taken place over many years. Yet, it is clear that counsel did in fact challenge and argue that the Government had not proven the nexus between possession of the firearms and drug trafficking. The Court points the litigants to pages 88-89 and page 103 of the transcript which reflects the challenge by Petitioner's counsel as to whether the nexus had been proven:

> Now, what about Count Six? As I just explained to you what the statute is, it's got two element. One is possession and, two, it's got to be in furtherance of a drug trafficking crime. So, if Deone Melvin (Petitioner) or anybody on trial here possessed a gun but it was not for the purpose of furthering a drug trafficking crime, then you can't be guilty of that charge because the charge requires both things. (Transcript pages 88-89.
>
> So, from April 2003, three months before he gets arrested, Deone Melvin (Petitioner) had no cocaine to sell, but they're saying on July 31, 2003–July 31, 2003–that he had guns at Lavender Lane and at Lords Landing and he's using them in furtherance of drug trafficking. Well, what drug trafficking? There witness said that the drug supply was cut off three months earlier. If he even possessed them, which I submit to you he didn't, he wasn't using them in furtherance of any drug trafficking on July 31, 2003. (Transcript page 103).

These statement and various other remarks made by counsel for Petitioner during the course

6

of the one hour closing argument convince the Court that Petitioner's counsel, contrary to Petitioner's claim, in fact, challenged and argued that the Government failed to establish the nexus between the alleged possession of the guns and a drug trafficking crime. In short, the Court does not believe on this record that Petitioner has made any showing that counsel's performance was legally deficient nor is there any evidence of prejudice pursuant to the <u>Strickland</u> standard. Accordingly, Petitioner's ineffective assistance of counsel claim must fail.

## IV

Finally, Petitioner has recently filed what he has styled as a Motion To Amend His Petition for § 2255 For Supplement Pleadings For Civil Rules And Procedure Pursuant to Rule 15 ( C ). This Motion was filed subsequent to Petitioner's Reply to the Government's Response and after the case became ripe for resolution. Petitioner's essential argument is that count 7 of the superceding indictment should be dismissed because § 924 © is unclear in that Congress has not clarified whether multiple possessions of firearms violations can be supported by a single predicate, and that under the rule of lenity, the court must vacate the 25 year consecutive sentence imposed in count 7. The Court notes that Petitioner has not presented the Court with any persuasive authority for his argument. Moreover, Petitioner could have but never raised this argument in his direct appeal before the Fourth Circuit. Not only does the Court believe that the statute is clear and unambiguous with reference to the intent of Congress that mandatory consecutive sentences are to be imposed for a subsequent § 924 © violation, and that there is no basis to support a *Strickland* claim in this context, but the Court further determines that this belated effort to raise what appears to be a groundless claim is untimely, has been waived and under these circumstances this request to amend his § 2255 Petition will not be permitted. The Motion to Amend, therefore, will be denied.

**V**

In sum, the Court has reviewed the current pleadings and the entire files relative to the present Motion as well as the underlying criminal case. The Court finds that Petitioner has not demonstrated a legal and cognizable basis for relief. Accordingly, the Petitioner's motion pursuant to § 2255 is DENIED. A separate Order will be issued.

Date: December 22, 2008

_____
Alexander Williams, Jr.
United States District Judge